UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| -vs- | : |
| | : 3:19-CR-00178 |
| WILLIAM BARRATT | : |
| Defendant | : |

### GOVERNMENT'S SENTENCING MEMORANDUM

On October 28, 2019, William Barratt pleaded guilty to receiving child pornography, a violation of 18 U.S.C. Section 2252(a)(2). The Presentence Report (PSR) determined that Barratt's base offense level under U.S.S.G. Section 2G2.2 was 22. Because Barratt's conduct was limited to receiving child pornography, he received a two-level reduction to 20. The PSR added the following sentencing enhancements: the offense involved a prepubescent minor or a minor under age twelve (2 levels); the material in the offense portrayed sadistic or masochistic content and sexual abuse or exploitation of an infant or toddler (4 levels); Barratt used a computer or interactive computer service for the receipt of child pornography (2 levels); and the offense involved 600 or more images (5 levels). Barratt's adjusted offense level was calculated

1

at 33. He received a three-level reduction for acceptance of responsibility, resulting in an offense level of 30. His criminal history category is I. The resulting guideline range is 97-121 months in prison.

Counsel for the defendant has filed objections to the pre-sentence report.

Defendant objects to the two-level enhancement in paragraph 19 of the PSR related to the material including images of prepubescent minors or minors under age 12. He claims that the enhancement can only be applied if the defendant willfully and knowingly received such images. He cites the *United States v. Saylor*, 959 F.2d 198, 201 (11th Cir. 1992) to support his claim. But *Saylor* involved a sentencing entrapment issue that is not present here. *Saylor* also involved a defendant who took affirmative steps to avoid receiving images of children younger than 12, which Barratt did not do in this case. Finally, *Saylor* is a decision of the 11th Circuit which is not binding on this Court, and the notion that courts cannot apply sentencing enhancements under the guidelines unless there is proof of scienter is inconsistent with decisions in this and other Circuits. *United States v.*

*Thornton*, 306 F.3d 1355, 1358–60 (3d Cir. 2002) (§ 3B1.4's language clearly dictates that "[i]f the defendant used or attempted to use" a minor in the commission of the offense, the sentencing enhancement applies. The enhancement's unambiguous language does not contain a scienter requirement, and "[w]e refuse to find ambiguity where none exists to defeat the plain meaning of the Guidelines"); *United States v. Mobley,* 956 F.2d 450, 453 (3d Cir. 1992); *United States v. Sizemore*, 622 Fed. Appx. 142, 144 (3d Cir. 2015); *United States v. Holcomb*, 390 Fed. Appx. 117, 121 (3d Cir. 2010) (no scienter requirement for guideline enhancement for possessing a stolen firearm); *United States v. Rouse*, 226 Fed. Appx. 97, 99–100 (3d Cir. 2007) (guideline section 2K2.1(b)(4) which enhances a sentence if a firearm was stolen does not contain a scienter requirement—defendant did not have to know that the gun he unlawfully possessed was stolen in order for the enhancement to apply).

    The Sentencing Guidelines are distinct from criminal statutes and "are not normally required to carry their own *mens rea* requirements." *United States v. Gonzalez,* 262 F.3d 867, 870 (9th Cir.2001); *United*

3

*States v. Qundhari*, 68 Fed. Appx. 553, 554 (6th Cir. 2003). Courts consistently refuse to read in scienter requirements to guideline provisions that do not expressly contain them because Congress and the Sentencing Commission know how to include such a requirement in guideline enhancement provisions. *United States v. Saavedra*, 523 F.3d 1287, 1289–90 (10th Cir. 2008); *United States v. Schnell*, 982 F.2d 216, 220 (7th Cir. 1992); *United States v. Qundhari*, 68 Fed. Appx. 553, 554 (6th Cir. 2003).

The defendant also objects to paragraph 20, which provides for the four-level enhancement for images that portray sadistic, masochistic or violent conduct or sexual abuse of an infant or toddler under Section 2G2.2(b)(4). This objection, too, is foreclosed by the plain words of the guideline which contains no scienter requirement, and by application note 3 which expressly provides that the enhancement applies "regardless of whether the defendant specifically intended to possess, access with intent to view, receive, or distribute such materials." *United States v. Maurer*, 639 F.3d 72, 80 (3d Cir. 2011) (2G2.2(b)(4) does not include a scienter requirement).

4

The defendant next objects to paragraph 21 of the PSR which added a two-level enhancement for using a computer or interactive computer service for the possession, receipt, and access with intent to view such material under 2G2.2(b)(6). He claims that the enhancement constitutes double-counting because the charge that he pleaded guilty to includes language that he committed the offense by "means of a computer and cell phone," because the enhancement applies in nearly every child pornography case, and because he did not use a "computer" in the commission of the crime and the term "computer is overbroad and vague.

The defendant cites no case in support of these arguments. Specifying the means by which a defendant committed the crime in the indictment does not constitute "double counting." Using a computer or cell phone is not an element of the crime to which the defendant pleaded guilty—the crime is receiving child pornography.

Second, the fact that an enhancement applies in nearly all child pornography cases does not invalidate the enhancement. *See United States v. Husmann*, 649 Fed. Appx. 154, 157 n.3 (3d Cir. 2016) (even if

5

many offenders receive enhancements based on the age of the depicted minors, § 2G2.2(b)(2), distribution, § 2G2.2(b)(3)(F), and the number of images, § 2G2.2(b)(7)(A), the frequency with which they are applied does not lead to the conclusion that they should not be imposed when supported by the facts).

Third, the defendant did use a computer or an interactive computer service as defined in the guidelines in 2G2.2(b)(6), application note 1. 18 U.S.C. Section 1030(e)(1) ("computer" defined) and 47 U.S.C. Section 230(f) ("interactive computer service" defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions") set forth the definitions that apply here, and a cell phone with access to the internet or that can store information and send and receive text messages fits those definitions. *United States v. Mathis*, 767 F.3d 1264, 1283 (11th Cir. 2014) ("a defendant's use of a cell phone to call and send text messages constitutes the use of a

6

computer, as that term is defined in 18 U.S.C. § 1030(e)(1), and warrants imposition of an enhancement under U.S.S.G. § 2G2.1(b)(6)"); *United States v. Kramer*, 631 F.3d 900, 902 (8th Cir. 2011) (cell phone that accesses the internet and stores electronic communications is a computer under the guidelines).

The defendant also objects to paragraph 22 of the PSR which adds five levels because the offense involved more than 600 images under 2G2.2 (b)(7)(D). He contends that the enhancement can only be applied if the government proves that he intended to access or receive all 600 images. In support of this contention, the defendant cites *United States v. Keefer*, 405 Fed. Appx. 955 (6th Cir. 2010), an unpublished opinion of the Sixth Circuit. Unlike in *Keefer*, here the images were found in a location on the device that indicates that Barratt accessed all of the more than 600 images found on his device. Moreover, there is no scienter requirement for the number of images involved in the offense under 2G2.2(b)(7)(D). *United States v. Ray*, 704 F.3d 1307, 1312 (10th Cir. 2013) ("when the plain language of a guideline, in contrast to a

criminal statute, does not include a *mens rea* element, we should not interpret the guideline as containing such an element").

And even if there is a scienter requirement for the number of images, that requirement can be met by circumstantial evidence and inferences drawn from the location of the images on a device and other facts. *United States v. Nissen*, 666 F.3d 486, 491 (8th Cir. 2012); *United States v. Patrick*, 363 Fed. Appx. 722, 725 (11th Cir. 2010); *United States v. Roszczipka*, 473 Fed. Appx. 211, 212 (4th Cir. 2012). Barratt admitted during his guilty plea to knowingly receiving images of child pornography on his device. The location of those images on the device indicates that Barratt accessed and received all of them. He used child pornography search terms to locate all of the images. He told agents that he accessed and viewed child pornography for a year on a daily basis and regularly masturbated to the images. There is sufficient circumstantial evidence that Barratt knowingly received all of the images found on his device.

The defendant contends that the child pornography guidelines should not be considered and are not entitled to deference because they

are not empirically-based. The sentencing guidelines in child pornography cases, however, reflect the will of Congress which is charged with determining the penalties for criminal activity. They reflect Congress' determination that child pornography offenders—including those who receive child pornography—cause immense harm to the individual children that are the victims of exploitation, and harm our society as a whole.

A meaningful consideration of the sentencing guidelines and the other factors under 18 U.S.C. § 3553(a), supports a sentence within the advisory guidelines range.

Barratt received images of child pornography for a 12-month time period and on a daily basis. He admitted to masturbating to the images. A search of Barratt's device revealed approximately 1700 images depicting child pornography. These images included children under the age of 12, toddlers, and infants being sexually abused by adult males, and bestiality. The images involved in the offense included the portrayal of sadistic or masochistic conduct or depictions of violence.

As noted above, the applicable guideline range in this case is 97-121 months in prison.

The guidelines are advisory and constitute one important factor among several that guide the courts in the imposition of sentence. The other factors are set forth in 18 U.S.C. § 3553(a), and include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide for just punishment, to afford adequate deterrence, to protect the public from further crimes by the defendant, and to provide the defendant with educational or vocational training, medical care, or other correctional treatment, the kinds of sentences available, the need to avoid unwarranted disparities in sentencing, and the need to provide restitution to victims.

In this case, the Section 3553(a) factors warrant a sentence within the guideline range.

First, Barratt's accessing, receiving, and viewing those images helped to perpetuate the market for images of the sexual abuse of young children. Real children—some of them infants and toddlers—were horribly sexually abused so that offenders like Barratt can

10

obtain, download, and view these images, getting sexual gratification from the sexual exploitation of our most vulnerable victims. Each viewing of such images further victimizes the children who were the initial subject of the sexual abuse.

The nature and circumstances of the offense are that the defendant obtained, accessed and viewed child pornography for perverse and deviant sexual gratification, helping to perpetuate a market for the production and trafficking of this sordid and horrible material, and perpetuating the misery and painful experiences of the young, helpless victims. Child pornography is not a victimless crime–children are sexually abused and exploited to create the images. The young children are victimized again and again when offenders like Barratt access and view the images. As our Supreme Court has stated, "the use of children as subjects of pornographic materials is harmful to the psychological, emotional, and mental health of the child." New York v. Ferber, 458 U.S. 747, 758 (1982).

The sentence must reflect the seriousness of the offense, provide for just punishment, deter others from committing similar offenses, and

protect the public from further crimes by the defendant.

The seriousness of the offense is reflected in the grievous harm done to the very real victims in this case–harm that was compounded by Barratt's subsequent accessing of the images. Victims in this case included infants, toddlers and young children who were sexually abused to produce the child pornography sought and obtained by Barratt.

Just punishment in this case must be a significant prison sentence to reflect the harm done by this defendant, to protect the public from further crimes by this defendant and to deter others from committing similar crimes.

The protection of the public, especially children, is of paramount importance. The defendant, by his insatiable interest in child pornography of the most sordid kind, has demonstrated a dangerous sexual attraction to children and the abuse and molestation of children. In his confession to agents, Barratt admitted that he became sexually aroused when he viewed images of child pornography and masturbated to the images. He also stated that he viewed child pornography daily during this 12-month time period. He sought these images by using

12

search terms to find child pornography. The most effective way to protect the public from more crimes by the defendant is to sentence him to a lengthy term of imprisonment and place him on supervised release for a significant time period when he gets out of prison.

A sentence within the guideline range would reflect the harm done by this defendant, would adequately protect the public from further crimes by Barratt, and would deter others from committing similar crimes. A sentence within the guideline range would be sufficient, but no greater than necessary to accomplish the goals of sentencing set forth in §3553(a), and would be a reasonable sentence under all of the facts and circumstances of this case.

Barratt's conduct in actively searching for child pornography on a daily basis for his sexual gratification and obtaining images involving the sexual abuse of infants, toddlers and young children, and his own acknowledgement of his sexual attraction to young children, makes him a more dangerous offender and a greater risk for recidivism.

The Third Circuit Court of Appeals has explained that "in

evaluating the magnitude of the harm caused by child pornography, we defer to the findings made by Congress." United States v. MacEwan, 445 F.3d 237, 249 (3d Cir. 2006). Congress has made specific and repeated findings regarding child pornography, including that: (1) "Child pornography is a permanent record of a child's abuse and the distribution of child pornography images revictimizes the child each time the image is viewed," Pub. L. 110-358, § 102,122 Stat. 4001, October 8, 2008; (2) "The illegal ...distribution [and] receipt...of child pornography is harmful to the psychological, emotional, and mental health of the children depicted in child pornography and has a substantial and detrimental effect on society as a whole," Pub. L. 109-248, Title V, § 501, 120 Stat. 623, July 27, 2006;   (3) "The government has a compelling State interest in protecting children from those who sexually exploit them, and this interest extends to stamping out the vice of child pornography at all levels of the distribution chain," Id.; (4) "Every instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse," Id.; (5) "where children are used in its production, child pornography

14

permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years," Pub. L. 104-208, Div. A, Title I, § 101, 110 Stat. 3009-26, September 30, 1996; (6) "child pornography is often used by pedophiles and child sex abusers to stimulate and whet their own sexual appetites, and as a model for sexually acting out with children; such use of child pornography can desensitize the viewer to the pathology of sexual abuse or exploitation of children, so that it can become acceptable to and even preferred by the viewer;" Id.; (7) "the existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children," Id.; (8) "it inflames the desires of child molesters, pedophiles, and child pornographers who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials," Id.; and (9) "the sexualization and eroticization of minors through any form of child pornographic images has a deleterious effect

15

on all children by encouraging a societal perception of children as sexual objects and leading to further sexual abuse and exploitation of them." Id.

The Supreme Court has stated that, "The most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product." New York v. Ferber, 458 U.S. 747, 760 (1982) (emphasis added). By fueling the market for child pornography Barratt was effectively "promoting the product."

Based on all of the above, the government urges the court to impose a sentence within the advisory guideline range, which would be consistent with the factors set forth in 18 U.S.C. § 3553(a).

                                              Respectfully submitted,
                                              DAVID J. FREED
                                              United States Attorney

Date: February 14, 2020       /s/ Francis P. Sempa
                                              Francis P. Sempa
                                              Assistant United States Attorney
                                              PA 41294
                                              Office of the U.S. Attorney
                                              Suite 311, 235 North Washington Ave.
                                              Scranton, PA 18501
                                              570-348-2800/FAX (570) 348-2037

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on February 14, 2020, she served a copy of the attached:

## GOVERNMENT'S SENTENCING MEMORANDUM

By ECF:

Eric M. Prock, Esq.

                              /s/Luann Manning

                              _____

                              LUANN MANNING
                              Supervisory Legal Assistant